IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TOMMY LEE WAUGH, #47088-074,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 21-cv-813-JPG |
| | ) |
| **M. SCHREIBER, J. LECLAIR,** | ) |
| **M. WALLACE, DAN SPROUL,** | ) |
| **D. CHRISTENSEN, C. DAVIS,** | ) |
| **SARAH BYRAM, KENT RUSHING,** | ) |
| **N. SIMPKINS, KATHY HILL,** | ) |
| **BARBARA VON BLANCKENSEE,** | ) |
| **AMBER NELSON, B. PATTIOS,** | ) |
| **M. STALLART, RICHARD M. WINTER,** | ) |
| **MARY NOLAND,** | ) |
| **KATHERINE SIEREVELD,** | ) |
| **TRACY KNUTSON, and** | ) |
| **USA,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Tommy Lee Waugh is an inmate in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the United States Penitentiary in Terre Haute, Indiana. (Doc. 9). Previously, Plaintiff was confined at the United States Penitentiary in Marion, Illinois ("Marion") in the Communications Management Unit ("CMU"). While at Marion, Plaintiff filed a Complaint in the Circuit Court for the First Judicial Circuit, Williamson County, in the State of Illinois.[1] (Doc. 1-1, pp. 9-16). Defendants removed the case to this Court pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, a federal statute commonly known as the "Westfall Act," 28 U.S.C. § 2679, and alternatively under the federal officer removal

---

[1] Plaintiff's Williamson County case was docketed as No. 21-L-54, filed there May 3, 2021. (Doc. 1-1, p. 2).

statute, 28 U.S.C. § 1442(a)(1). (Doc. 1).

The Complaint alleges Defendants denied Plaintiff access to the BOP's Administrative Remedy Program for resolution of complaints related to his incarceration, and claims violations of Illinois law, the First Amendment of the United States Constitution, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). (Doc. 1-1, pp. 13-16). Plaintiff seeks damages and injunctive relief. (Doc. 1-1, p. 16).

On March 24, 2022, the Court found removal was proper, and granted in part Defendants' motion to substitute the United States as Defendant. (Doc. 10, pp. 2-4). The United States is now the sole Defendant for Plaintiff's claims based on Illinois law (which are proceeding under the Federal Tort Claims Act) and on the APA (Counts 1, 3, 4, and 5). *Id.* The individual Defendants remain in the action for Count 2 only, which raises claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff makes the following allegations in his Complaint (Doc. 1): When he was placed in the CMU at Marion in October 2019, Plaintiff was able to access the prison's Administrative Remedy Program by obtaining BP-8 and other forms to file institutional grievances regarding his conditions of confinement. (Doc. 1-1, pp. 8-10). Defendant Hill and Gary Burgess (who is not a Defendant) functioned as correctional counselors for the CMU, provided required forms, and

handled inmate complaints at the initial stages. Burgess retired in late 2020 and was replaced by Defendant Kent Rushing; Plaintiff was able to obtain BP-8 and other forms from him. (Doc. 1-1, p. 10).

However, as the number of complaints filed by Plaintiff and other CMU inmates increased, Defendants Blanckensee, Nelson, Stallard, Pattios, Winter, and Noland told Defendants Siereveld, Sproul, Davis, Knutson, Byram, Hill, Rushing, Wallace, Christensen, and LeClair to "do something" to stop CMU inmates from filing grievances. (Doc. 1-1, p. 10). Blanckensee, Nelson, Noland, Stallard, Pattios, Winter, Siereveld and Knutson directed Schreiber and Wallace to find ways to reject BP-9 appeals on procedural grounds. Rushing was instructed to delay responses to BP-8 forms as long as possible. (Doc. 1-1, p. 11). Thereafter, Plaintiff experienced lengthy delays in obtaining responses to his administrative complaints and received at least one rejection of a BP-9 form because it was not "worded the same" as his BP-8, which Plaintiff contends is not a requirement of the Administrative Remedy Program. (Doc. 1-1, pp. 11-12).

In early April 2021, Rushing left the CMU and was replaced by Simpkins, who has repeatedly refused to provide Plaintiff and other inmates with BP-8, BP-9, BP-10, and BP-11 forms to enable them to file legitimate grievances, in violation of federal regulations and rules. Plaintiff asserts that Simpkins' refusal is at the behest of Blanckensee and the other Defendants at the BOP's North Central Regional Office (Nelson, Pattios, Stallart, Winter, Noland, Siereveld, and Knutson). (Doc. 1-1, p. 12). Marion Warden Sproul and the other Defendants have made the Administrative Remedy Program a "dead-end" for Plaintiff and other CMU inmates by refusing to grant any relief for administrative complaints. (Doc. 1-1, p. 13).

Plaintiff outlines five claims for relief (detailed below). He seeks injunctive relief for the APA claim (Count 3) and damages for the other claims. (Doc. 1-1, pp. 13-16).

Based on the allegations in the Complaint and the Court's order substituting the United States, the Court designates the following claims in this *pro se* action:

Count 1: Claim under Illinois law for civil conspiracy against the United States of America for the BOP officials' agreement to deny Plaintiff access to the Administrative Remedy Program by refusing to provide necessary forms, delaying responses to his grievances, and rejecting them for improper reasons.

Count 2: First Amendment claim against the individual Defendants for denying Plaintiff's right to petition the government for redress of grievances, by refusing to provide him with Administrative Remedy forms, delaying responses, rejecting them for improper reasons, and refusing to provide any relief via the Administrative Remedy Program.

Count 3: Administrative Procedure Act claim under 5 U.S.C. § 706(2)(A) against the United States of America, for arbitrarily, capriciously, and unlawfully obstructing and denying Plaintiff's access to the Administrative Remedy Program.

Count 4: Claim under Illinois law for negligence against the United States of America for the BOP officials' refusal to provide Plaintiff with access to the Administrative Remedy Program.

Count 5: Claim under Illinois law for intentional infliction of emotional distress against the United States of America the BOP officials' refusal to provide Plaintiff with access to the Administrative Remedy Program.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

**DISCUSSION**

**Count 1 – Civil Conspiracy**

This claim, as well as the claims in Counts 4 and 5, is based on Illinois law and is governed

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.; (Doc. 10, p. 3). Section 2679(d)(4) of the FTCA provides that, as here, when the United States is substituted for individual federal-employee defendants following certification by the Attorney General that the employees were acting within the scope of their office/employment, the action "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4). Section 1346(b) establishes district court jurisdiction over "civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" where the law of the place of occurrence would provide for liability. 28 U.S.C. § 1346(b)(1).

Under Illinois law, to prevail on a claim for civil conspiracy, a Plaintiff must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

In this case, Plaintiff seeks money damages based on his allegations that the individual BOP employees at Marion and in the BOP's regional office agreed to prevent him from using the BOP's Administrative Remedy Program, which was established by federal regulations and BOP policy to enable federal inmates to bring complaints to the attention of prison officials and seek resolution. (Doc. 1-1, pp. 8-9, 13-14). Based on that agreement, he claims Marion officials took various actions to hinder his ability to file administrative grievances and/or to obtain responses to his complaints. At this early stage, Count 1 survives review under § 1915A and will proceed for

further consideration against the United States.

**Count 2 – First Amendment**

The Court construed this First Amendment claim as having been brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 10, pp. 3-4). *Bivens* recognized an implied civil damages remedy against individual federal officers who allegedly violated the plaintiff's federal constitutional rights under the Fourth Amendment. *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). But *Bivens* and Section 1983 are not the same, and the Supreme Court has recognized only two other instances in which an implied damages remedy is available for a constitutional deprivation. *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment sex discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim for denial of medical care for a serious medical condition). Recent cases have declined to extend a *Bivens* remedy to contexts beyond the Fourth Amendment's protection against unreasonable search and seizure and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. --, 137 S. Ct. 1843 (2017) (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims; and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, -- U.S. --, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

Here, Count 2 is based on an alleged violation of Plaintiff's First Amendment right to petition the government for redress of grievances. (Doc. 1-1, pp. 14-15). At its core, such a claim boils down to a claim for denial of access to the courts. *See Delgado v. Godinez*, 683 F. App'x 528 (7th Cir. 2017). In the Section 1983 context, a plaintiff who pursues such a claim "must identify

6

an underlying nonfrivolous claim that the prison officials' actions impeded." *Delgado*, 653 F. App'x at 529 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey,* 518 U.S. 343, 351-53 (1996). Plaintiff has failed to identify an underlying nonfrivolous claim that he was unable to pursue in court due to Defendants' actions.[3] The one example he mentions relates to claims he *is now pursuing* in this Court in Case No. 21-cv-812-JPG, thus no denial of access to the courts is apparent.

> As the *Delgado* court observed:
>
> [Plaintiff] appears to be confusing the right to *grieve* with the right to a grievance *process*. He has a First Amendment right to "petition the government for a redress of grievances," *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996), but he does not have a substantive due process right to an effective prison grievance process, see *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). If as a practical matter the grievance process is so ineffective as to be unavailable to the prisoner, the only consequence is that he is relieved of the duty to exhaust. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016).

*Delgado*, 653 F. App'x at 530 (emphasis in original).

The same is true here. If Plaintiff's claim that he was denied access to an effective prison grievance procedure were considered in the more expansive § 1983 context, it would be dismissed on its merits for failure to state a claim upon which relief may be granted. In the *Bivens* context applicable here, there is no justification for the extension of a *Bivens* remedy to a First Amendment claim that is not even cognizable under § 1983. The Supreme Court's recent guidance on the narrow scope of *Bivens* underscores that allowing this claim to proceed would be an improper

---

[3] The Complaint references only one administrative complaint which Plaintiff claims was improperly rejected – his grievance over Defendant Hill's refusal to notarize state court documents he attempted to file in Arizona state court. (Doc. 1-1, p. 12). That matter is the subject of Plaintiff's separate lawsuit now proceeding in this Court under Case No. 21-cv-812-JPG. Plaintiff chose not to pursue his *Bivens* claim related to that incident, and this Court dismissed his APA counts in that case for failure to state a claim upon which relief may be granted. Plaintiff's FTCA claims for civil conspiracy, negligence, and intentional infliction of emotional distress were allowed to proceed past threshold review. (Doc. 14 in Case No. 21-812-JPG).

7

expansion of *Bivens*. *Egbert*, 142 S. Ct. 1793; *Abbasi*, 137 S. Ct. 1843; *see also Smadi v. True*, 2021 WL 2853262, Case No. 18-cv-2149-JPG (S.D. Ill. July 8, 2021).

For these reasons, the First Amendment *Bivens* claim in Count 2 will be dismissed without prejudice for failure to state a claim upon which relief may be granted. The individual Defendants will be dismissed from this action without prejudice.

**Count 3 – Administrative Procedure Act**

Referencing the BOP officials' obstruction and denial of Plaintiff's access to the Administrative Remedy Program at Marion, Plaintiff requests this Court to enter "an injunction under 5 U.S.C. 702, 706(2)(A), setting [Defendants'] actions/omissions aside." (Doc. 1-1, p. 15).

The APA provides for judicial review of an agency action that adversely affects a person. 5 U.S.C. § 702. An aggrieved person may bring an action against the United States "seeking relief other than money damages[.]" *Id.* Section 706(2)(A) of the APA directs that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"[4]

If Plaintiff were still incarcerated at Marion and still subject to BOP officials' alleged obstruction of his access to the prison grievance procedure, review pursuant to the APA could result in meaningful injunctive relief. However, Plaintiff has been housed at the federal prison in Terre Haute, Indiana since September 2021. (Doc. 9). He is therefore obviously no longer being deprived of access to the Administrative Remedy Program at Marion, which is the focus of his claim. Under these circumstances, the Court concludes that Count 3 no longer presents a live case or controversy that might result in meaningful relief if Plaintiff were to prevail on this claim. *See*

---

[4] Section 706(1) of the APA directs that a court sitting in review of an agency action shall "compel agency action unlawfully withheld or unreasonably delayed[.]" Plaintiff does not request an order compelling any action on the part of Defendants.

*Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) ("A case is moot when 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396 (1980)); *see also Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Marion under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

Accordingly, the APA claim in Count 3 will be dismissed without prejudice as moot.

**Count 4 – Negligence**

As noted under Count 1, this claim against the United States is governed by the FTCA. Under Illinois law, to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011).

Here, Plaintiff asserts that the acts and omissions of the BOP officials who prevented him from accessing the Administrative Remedy Program amounted to negligence. The Court accepts the premise that officials had a duty to provide Plaintiff the opportunity to file administrative grievances and appeals according to this established program.

As for the "injury" component of a negligence claim, Plaintiff states he was unable to file "legitimate, non-frivolous grievances" as a result of being denied the necessary forms to submit Administrative Remedy requests, and says that officials' refusal to consider those grievances he did file and refusal to grant any relief made Marion's Administrative Remedy Program a "dead-

end," depriving him of any opportunity to obtain resolution of his complaints within the institution. (Doc. 1-1, pp. 12-13). While inmates do not have a right to a favorable outcome of an administrative complaint, at this early stage the Court accepts the notion that the deprivation of any meaningful access to the Administrative Remedy Program amounts to an injury proximately caused by the BOP officials' actions/omissions. Count 4 may therefore proceed for further consideration.

**Count 5 – Intentional Infliction of Emotional Distress**

Count 5 is likewise governed by the FTCA. (See Counts 1 and 4 above). In order to state a claim under Illinois law for intentional infliction of emotional distress, Plaintiff must show that the BOP officials acted in an extreme and outrageous way, intending to inflict severe emotional distress or knowing there was a high probability that would occur, and that their actions in fact caused him severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). Plaintiff alleges that BOP officials intentionally refused to provide him with complaint forms and otherwise hindered his access to the Administrative Remedy Program, that their actions were intended to cause him emotional distress, and that he suffered extreme anxiety, depression, and sadness as a result. At this stage, Count 5 also survives § 1915A review and may proceed.

DISPOSITION

**IT IS HEREBY ORDERED** that Count 2 is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Count 3 is **DISMISSED** without prejudice as moot. Defendants Schreiber, LeClair, Wallace, Sproul, Christensen, Davis, Byram, Rushing, Simpkins, Hill, Blanckensee, Nelson, Pattios, Stallart, Winter, Noland, Siereveld, and Knutson are **DISMISSED** without prejudice from the action.

**IT IS FURTHER ORDERED** that Counts 1, 4, and 5 survive § 1915A review and will proceed as FTCA claims against the United States of America.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on the United States; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve the United States pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended Complaint (Doc. 13), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint (Doc. 13), and this Memorandum and Order.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is reminded that he is under a continuing obligation to keep the Clerk of

Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:  6/30/2022**

<u>*s/ J. Phil Gilbert*</u>
**J. PHIL GILBERT**
**United States District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.